IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | |
|---|---|
| Lea Shawnette Gutierrez,<br>          Plaintiff,<br><br>v.<br><br>Elvia Rodriguez, individually,<br>Charles Wolf, individually, &<br>Winkler County, Texas,<br>          Defendants. | )<br>)<br>)<br>)<br>)     CIVIL ACTION NO: _____<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S ORIGINAL COMPLAINT

This case stems from a former public employee, Lea Shawnette Gutierrez (hereinafter "Plaintiff"), speaking out against the illegal activities of her former supervisor, Elvia Rodriguez (hereinafter "Defendant-Rodriguez"), and thereafter being retaliated against by Defendant-Rodriguez and the employer itself, Winkler County, Texas ("Defendant-Winkler County"). Furthermore, Defendant-Rodriguez's supervisor, Charles Wolf ("Defendant-Wolf"), sat idly by while the retaliation occurred.

### PARTIES

1. Plaintiff is a former employee of Defendant-Winkler County.

2. Defendant-Rodriguez was Plaintiff's supervisor at all relevant times.

3. Defendant-Wolf was Defendant-Rodriguez's supervisor at all relevant times.

4. Defendant-Winkler County is a corporate and political body recognized as a county by the State of Texas.

## JURISDICTION

5. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

6. This Court has subject matter jurisdiction over the state claim pursuant to 28 U.S.C. § 1367.

## VENUE

7. Venue is proper in accordance with 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims occurred in this venue.

## CONDITIONS PRECEDENT

8. All conditions precedent have been performed or have occurred.

## FACTS

9. From September 21, 2020, through April 21, 2023, Plaintiff was employed by Defendant-Winkler County as an adult probation officer.

10. Plaintiff worked within the Community Supervision and Corrections Department, also known as the Adult Probation Department (hereinafter "the Department").

11. Plaintiff's supervisor at all relevant times was Defendant-Rodriguez, who held the title of Director of the Department.

12. Defendant-Rodriguez was supervised in her day-to-day duties (including on personnel matters) by Winkler County Judge, Defendant-Wolf.[1]

13. From March 20-23, 2023 (Monday through Thursday), Plaintiff and Defendant-Rodriguez attended training together in Horseshoe Bay, Texas.

    a. To travel to the training, Defendant-Rodriguez took a government vehicle belonging to Defendant-Winkler County.

---

[1] By "County Judge," Plaintiff means the presiding officer of the county commissioners court and the chief administrative official within the county.

    b. Defendant-Rodriguez suggested that Plaintiff drive separately because Defendant-Rodriguez had personal matters to attend to in Austin, Texas, after the training and Defendant-Rodriguez would not be returning until Sunday, March 26, 2023.

    c. Austin is approximately 53 miles southeast from Horseshoe Bay and is in the opposite direction from the Department's office in Kermit, Texas.

    d. Pursuant to Defendant-Rodriguez's suggestion, Plaintiff drove her personal vehicle to the training.

    e. Plaintiff left her home on Sunday, March 19, 2023, and returned home on the evening of Thursday, March 23, 2023.

    f. Upon information and belief, Defendant-Rodriguez attended to the personal matters in Austin previously referenced.[2]

    g. At no time prior to or during the training did Defendant-Rodriguez inform Plaintiff that Plaintiff was entitled to claim mileage reimbursement for taking her personal vehicle.

14. On April 18, 2023, Plaintiff was called into the office of Jeanna Willhelm (hereinafter "Auditor Willhelm"), County Auditor for Defendant-Winkler County.

    a. Plaintiff was asked why she had taken a personal vehicle to the training, so Plaintiff informed Auditor Willhelm of Defendant-Rodriguez's travel arrangements.

    b. Auditor Willhelm informed Plaintiff that Plaintiff was entitled to reimbursement for mileage on her personal vehicle, and that Plaintiff must be reimbursed for taking a personal vehicle because "what's right is right."

    c. Having discussed Plaintiff's travel, Auditor Willhelm also noticed that Plaintiff's timesheet from that week was incorrect. Plaintiff had submitted a timesheet

---

[2] This paragraph and all paragraphs alleged upon information and belief are pleaded consistent with Fed. R. Civ. P. 11(b)(3) because this information is uniquely within control of Defendants. *See Johnson v. Johnson*, 385 F.3d 503, 531 at n. 19 (5th Cir. 2004).

documenting that her hours were Monday through Friday, although Plaintiff had been given an off-day on Friday. As explained to Auditor Willhelm, Plaintiff did this at the direction of Defendant-Rodriguez based on Plaintiff traveling (i.e., working) on Sunday, March 19, 2023. At the time of submitting the timesheet, Plaintiff was unaware how such time was compensated, so Plaintiff believed Defendant-Rodriguez was providing accurate instructions.

d. Auditor Willhelm told Plaintiff that, in addition to claiming reimbursement for mileage, the timesheet needed to be corrected; a separate food overage also needed to be corrected. Auditor Willhelm further stated that she would discuss the travel arrangement and timesheet matters with Defendant-Rodriguez.

e. During the meeting, Plaintiff became concerned that claiming mileage would be deducted from the Department's budget, which would upset Defendant-Rodriguez. Plaintiff also recognized that she had been put in the difficult situation of informing Auditor Willhelm of Defendant-Rodriguez's misconduct, specifically, (1) using a government vehicle for personal travel and (2) instructing Plaintiff to submit an inaccurate timesheet.

f. As such, Plaintiff told Auditor Willhelm that Plaintiff did not want to claim mileage and that she did not want to cause any problems for the Department. When Auditor Willhelm inquired further, Plaintiff explained her concerns above (i.e., taking money from the Department's budget and exposing Defendant-Rodriguez's misconduct). Plaintiff also explained that Defendant-Rodriguez prohibited employees in the Department from speaking with other departments of Defendant-Winkler County without Defendant-Rodriguez's permission.

g. Auditor Willhelm, appearing to grow more concerned, told Plaintiff that Defendant-Rodriguez was violating Defendant-Winkler County's open door policy and that such a violation needed to be brought to the attention of Defendant-Rodriguez's supervisors, Defendant-Wolf and the 109th District Judge.[3]

h. Auditor Willhelm asked Plaintiff if she wanted to go with Auditor Willhelm to discuss these issues with Defendant-Rodriguez's supervisors. Plaintiff said she did not want to do so for fear of retaliation and being fired by Defendant-Rodriguez. Auditor Willhelm said that firing Plaintiff under such circumstances would be illegal retaliation. Plaintiff explained that, even if she was not fired, Defendant-Rodriguez could still make Plaintiff's life very difficult in the workplace.

i. Plaintiff explained to Auditor Willhelm that things had been difficult for Plaintiff in the Department since November 2022, when Plaintiff and Defendant-Rodriguez had a workplace dispute. More specifically, Defendant-Rodriguez had been permitting a minor to be in the office; the minor was one of the other employee's children. Part of the Department's mission is to supervise people on probation, including sex offenders. One of the sex offenders raised concerns to Plaintiff about the presence of the minor. Plaintiff attempted to bring those concerns to Defendant-Rodriguez, but Defendant-Rodriguez dismissed Plaintiff; Defendant-Rodriguez specifically told Plaintiff to "mind [her] own business." Eventually, the sex offender wrote a complaint to Defendant-Wolf. As Plaintiff explained to Auditor Willhelm, Defendant-Rodriguez blamed Plaintiff for this letter because Defendant-Rodriguez assumed (inaccurately) that Plaintiff encouraged the letter to be written.

---

[3] Upon information and belief, the 109th District Judge only supervises Defendant-Rodriguez on certain court-related budgetary matters, and such supervision has been delegated to Auditor Willhelm.

    j.    At the conclusion of the meeting on April 18, 2023, Auditor Willhelm informed Plaintiff that Auditor Willhelm was going to bring all this information to Defendant-Wolf and the 109th District Judge.

15. On April 19, 2023, Plaintiff told Defendant-Rodriguez about the meeting with Auditor Willhelm. Defendant-Rodriguez became very angry and told Plaintiff, multiple times, that Plaintiff had "no right" to speak with Auditor Willhelm without Defendant-Rodriguez's permission. Defendant-Rodriguez also stated that claiming mileage was "taking money out of the paychecks" of other employees in the Department. Defendant-Rodriguez further stated that it was "[her] budget" and that Plaintiff was "crossing a line."

16. On April 20, 2023, Defendant-Rodriguez confronted Plaintiff in the office. Defendant-Rodriguez was very angry at Plaintiff during this confrontation.

    a.    Defendant Rodriguez told Plaintiff that Defendant-Rodriguez had "shot [her]self in the foot" by approving Plaintiff's mileage reimbursement.

    b.    Defendant-Rodriguez further stated that, because she had approved the mileage reimbursement, the Department no longer had funding to buy a new tire (which needed replacing) for one of the Department's vehicles.

    c.    Defendant-Rodriguez also stated that she was counseled about Plaintiff's timesheet and that it needed to be changed. Defendant-Rodriguez instructed Plaintiff to re-submit a timesheet showing a Sunday through Thursday work week, calculating travel time on Sunday, March 19, 2023. After Plaintiff made such calculations, she was short by 2.5 hours (i.e., Plaintiff's actual travel time on Sunday was 5.5 hours). Defendant-Rodriguez advised Plaintiff to add 2.5 hours as "flex" time for home visits, which were never conducted. Plaintiff did as instructed by Defendant-Rodriguez.

      d.  Plaintiff and Defendant-Rodriguez did not speak for the remainder of the day.

17.    On April 21, 2023, Plaintiff grew concerned that, pursuant to Defendant-Rodriguez's instruction, Plaintiff had again submitted an inaccurate timesheet. While Plaintiff had worked in excess of 40 hours during the week in question (accounting for travel time back from training), she felt uncomfortable submitting a timesheet reflecting home visits which were never conducted. Plaintiff stepped outside the office to call Auditor Willhelm. In the Department, employees generally stepped outside the office to make calls that they did not want other employees to overhear. When Plaintiff stepped outside, Defendant-Rodriguez saw Plaintiff. Defendant-Rodriguez then also left the office. Plaintiff made the call, which was unanswered. Shortly after Plaintiff returned to the office, Defendant-Rodriguez returned with Winkler County Sheriff Darin Mitchell. Defendant-Rodriguez then terminated (i.e., discharged or fired) Plaintiff, requesting Plaintiff's badge and keys in the presence of the Sheriff. Defendant-Rodriguez provided no explanation beyond saying that Plaintiff's services were "no longer needed."

18.    After being terminated on April 21, 2023, Plaintiff again called Auditor Willhelm to advise her of the inaccurate timesheet. Auditor Willhelm was not available, but Plaintiff was transferred to the County Treasurer, who also handles some human resources duties. Thereafter, Plaintiff corrected the timesheet.

19.    On May 15, 2023, Plaintiff submitted a grievance about her termination to the County Treasurer,[4] the 109th District Judge, the County Attorney, and Defendant-Wolf.

20.    Plaintiff's termination paperwork from Defendant-Winkler County states that Defendant-Rodriguez terminated Plaintiff on April 21, 2023, for the following reasons: "no longer needed services"; "employee was told her services were no longer needed"; and "understands if

---

[4] The County Treasurer is *Susan* Willhelm, not to be confused with the County Auditor Jeanna Willhelm.

services are no longer needed (at Will employer)[.]" In response to the question, "Did [Plaintiff] violate company policy?", the answer is "No".

## CAUSES OF ACTION

21. Plaintiff hereby incorporates all prior paragraphs into all causes of action listed below.

Count 1—Defendant-Rodriguez (First Amendment retaliation under 42 U.S.C. § 1983)

22. During the meeting with Auditor Willhelm on April 18, 2023, Plaintiff reported Defendant-Rodriguez for repeated instances of misconduct. Specifically, Plaintiff reported the following legal or policy violations: (1) Defendant-Rodriguez using a government vehicle for personal travel following a training in March 2023; (2) Defendant-Rodriguez instructing Plaintiff to submit an inaccurate timesheet following a training in March 2023; (3) Defendant-Rodriguez seeking to prohibit Plaintiff from claiming mileage for a personal vehicle taken to a training in March 2023, when Plaintiff was entitled to reimbursement for such mileage; and (4) Defendant-Rodriguez violating the open door policy of Defendant-Winkler County, meaning that Defendant-Rodriguez prohibited Plaintiff from speaking with other county departments about Defendant-Rodriguez's misconduct.

23. After Defendant-Rodriguez learned that Plaintiff had reported Defendant-Rodriguez's misconduct, Defendant-Rodriguez terminated Plaintiff's employment.

24. At all relevant times, Defendant-Rodriguez was acting under color of state law as an employee of Defendant-Winkler County.

25. Plaintiff's termination was an adverse employment action.

26. Plaintiff's report of Defendant-Rodriguez's misconduct was speech about a matter of public concern. The public has a legitimate interest in knowing of a government official's misconduct.

27. Plaintiff's report of Defendant-Rodriguez's misconduct was speech made as a citizen, meaning any citizen would have, under the circumstances, felt compelled to report

Defendant-Rodriguez's misconduct to the County Auditor. Plaintiff's speech was not made during the course of performing her duties as an adult probation officer. Plaintiff's speech was unrelated to her duties as an adult probation officer. Plaintiff's speech was made to someone outside the Department.

28. Plaintiff's interest in the speech outweighed any government interest in the efficient provision of public services.

29. Defendant-Rodriguez's actions amounted to employment retaliation related to speech. Through such actions, Defendant-Rodriguez violated Plaintiff's First Amendment rights, as enforced through 42 U.S.C. § 1983.

Count 2—Defendant-Wolf (supervisory liability under 42 U.S.C. § 1983)

30. At all relevant times, Defendant-Rodriguez and Defendant-Wolf were acting under color of state law as employees of Defendant-Winkler County.

31. Defendant-Wolf was in a supervisory position over Defendant-Rodriguez.

32. Upon information and belief, Defendant-Wolf learned of Plaintiff's fears of retaliation from Defendant-Rodriguez on or about April 18, 2023.

33. Defendant-Wolf learned of Defendant-Rodriguez's actual retaliation against Plaintiff shortly after such retaliation occurred on April 21, 2023, and no later than May 15, 2023.

34. Defendant-Rodriguez's actions were a known or obvious deprivation of Plaintiff's constitutional rights.

35. Defendant-Wolf engaged in deliberate indifference to Plaintiff's constitutional rights by permitting Defendant-Rodriguez to violate Plaintiff's constitutional rights.

36. Through such action, Defendant-Wolf violated Plaintiff's constitutional rights through a subordinate in violation of 42 U.S.C. § 1983.

Count 3—Defendant-Winkler County (Declaratory Judgment Action)

37. To date, Defendant-Winkler County has not processed Plaintiff's grievance submitted on May 15, 2023.

38. Plaintiff, either on her own or through counsel, has asked for an update on the grievance's status multiple times (June 7, 2023; September 12, 2023; September 20, 2023).[5]

39. Plaintiff has received no response, beyond a phone call from someone at the Texas Association of Counties. During this call on September 21, 2023, the individual informed Plaintiff's counsel that Defendant-Winkler County was taking the position that Plaintiff was not its employee, so it had not and will not process the grievance. According to the person on the call, Defendant-Winkler County believes Plaintiff had some type of dual employment between Defendant-Winkler County and the 109th Judicial District. Following the call, Plaintiff's counsel inquired with both Defendant-Wolf (on behalf of Defendant-Winkler County) as well as the 109th Judicial District. Again Plaintiff asked for an update on the grievance. And again no response was received.

40. Nobody at Defendant-Winkler County has ever communicated with Plaintiff or her counsel about the grievance, despite Plaintiff's repeated requests for an update.

41. Plaintiff's pay stubs list her employer as Defendant-Winkler County. (Exhibit 1)

42. Plaintiff's most recent W-2 lists her employer as Defendant-Winkler County. (Exhibit 2)

43. Plaintiff's timesheets which gave rise to the present cause of action list Plaintiff as a full-time employee of Defendant-Winkler County. (Exhibit 3)

44. Plaintiff hereby asks the Court to declare that Plaintiff was an employee of Defendant-Winkler County.

---

[5] On July 21, 2023, Plaintiff also requested all of her personnel records from Defendant-Winkler County; the responsive records that Plaintiff received contained the grievance.

45. Plaintiff further asks the Court to order Defendant-Winkler County to process Plaintiff's grievance by a specified date.

46. Defendant-Winkler County's actions have rendered Plaintiff with no remedy under the Texas Whistleblower Act, Government Code Chapter 554 ("Whistleblower Act"). In other words, through inaction, Defendant-Winkler County is seeking to immunize itself from a claim when the state legislature has expressly waived sovereign immunity for such a claim.

47. The Whistleblower Act has a shifting timeliness requirement, as is common in employment law. A claimant must initiate their claim within 90 days of a violation. *See* Government Code § 554.005. However, a claimant must also use the employer's grievance procedure. *See* Government Code § 554.006(a). Using the grievance procedure tolls the limitations period. *See* Government Code § 554.006(c). After filing a grievance, if the grievance is not processed within 60 days, the claimant can either (1) wait for the grievance process to run its course and file suit within 30 days thereafter, or (2) file suit within the remaining original 90 day period. *See* Government Code § 554.006(d).

48. Plaintiff unquestionably brought her grievance within 90 days—Plaintiff's termination occurred on April 21, 2023; Plaintiff filed the grievance on May 15, 2023. However, by Defendant-Winkler County refusing to process Plaintiff's grievance (coupled with the original 90-day period having passed), Plaintiff is now in a state of indefinite limbo, unable to seek redress under the Whistleblower Act.

49. Plaintiff requests the Court utilize is supplemental jurisdiction under 28 U.S.C. § 1367 and apply the Texas Uniform Declaratory Judgments Act (Civil Practice and Remedies Code, Chapter 37); Plaintiff further requests reasonable costs and attorney fees pursuant to Civil Practice and Remedies Code § 37.009. Plaintiff believes using the Texas statute is proper because the controlling substantive law (i.e., the Whistleblower Act) authorizes attorney fees. *See* Government Code §

554.003(a). In other words, relying on the Texas declaratory judgment statute does not create an authorization for attorney fees which does not otherwise exist.

50. Alternatively, if the Court is not inclined to apply Texas's declaratory judgment statute, Plaintiff requests this Court apply 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57, and for this Court to declare that that Plaintiff was an employee of Defendant-Winkler County. Plaintiff further asks the Court to order Defendant-Winkler County to process Plaintiff's grievance by a specified date.

Count 4—Defendant-Winkler County (Texas Whistleblower Act, alternative to Count 3)

51. Defendant-Winkler County, through communication from the Texas Association of Counties, denied Plaintiff's grievance on September 21, 2023.

52. As detailed in ¶¶ 9-20, which are hereby incorporated, Defendant-Winkler County terminated Plaintiff as retaliation for Plaintiff's good faith report of Defendant-Rodriguez's misconduct. The misconduct reported by Plaintiff was a violation of law within the meaning of Government Code Chapter 554.

53. Through the above-described conduct, Defendant-Winkler County violated the Texas Whistleblower Act, Government Code Chapter 554.

**DAMAGES**

54. As a result of the Defendants' actions, Plaintiff suffered the following compensatory damages:

   a. Lost earnings;

   b. Loss of earning capacity in the past and in the future;

   c. Mental and emotional pain and anguish in the past and in the future; and

   d. Injury to reputation in the past and in the future.

55.     The assessment of exemplary (punitive) damages is warranted against Defendant-Rodriguez and Defendant-Wolf because their actions were taken with reckless or callous indifference to Plaintiff's federally protected rights.

## ATTORNEY FEES & COSTS

56.     Plaintiff is entitled to and requests an award of attorney fees and litigation costs pursuant to 42 U.S.C. § 1988, as well as Texas Government Code § 554.003(a) and Civil Practice and Remedies Code § 37.009.

## JURY DEMAND

57.     Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

58.     For these reasons, Plaintiff requests a judgment against Defendants for the following:

   a. Compensatory damages against Defendants, jointly and severally;

   b. Exemplary (punitive) damages against Defendant-Rodriguez and Defendant-Wolf;

   c. Attorney fees and litigation costs;

   d. Prejudgment and postjudgment interest;

   e. Reinstatement of employment; and

   f. All other relief which may be just and proper under the circumstances.

Respectfully submitted,

/s/Ross A. Brennan
Bar No. 29842-64
Cronauer Law, LLP
668 Main St, Unit D
Buda, TX 78610
512-733-5151
ross@cronauerlaw.com